UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Andrew Cole VanHauer,

    Plaintiff,

v.

Minneapolis Police Department; City of
Minneapolis; State of Minnesota; and
Hennepin Healthcare,

    Defendants.

File No. 23-cv-1208 (ECT/LIB)

**OPINION AND ORDER**

---

Andrew Cole VanHauer, *pro se*.

Mark Enslin and Chase Webber, Minneapolis City Attorney's Office, Minneapolis, MN, for Defendants Minneapolis Police Department and City of Minneapolis.

Matthew Mason, Minnesota Attorney General's Office, St. Paul, MN, for Defendant State of Minnesota.

Matthew S. Frantzen, Hennepin County Attorney's Office, Minneapolis, MN, for Defendant Hennepin Healthcare System, Inc.

---

On April 30, 2017, Minneapolis Police Department officers were dispatched to Plaintiff Andrew Cole VanHauer's home. Without his consent, officers took Mr. VanHauer to a hospital operated by Hennepin Healthcare Systems, Inc., where he was placed on a 72-hour mental health hold. Representing himself, Mr. VanHauer brings several claims through 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights. He also sues under the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101 *et seq.*

Defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(6) and 12(c). The motions will be granted. Mr. VanHauer's § 1983 claims against Defendant State of Minnesota will be dismissed based on Eleventh Amended immunity. His § 1983 claims against the municipal Defendants—the City of Minneapolis, Minneapolis Police Department, and Hennepin Healthcare—will be dismissed for failing to plausibly allege *Monell* liability. And the operative Second Amended Complaint lacks enough factual content to plausibly state an ADA claim against any Defendant. To the extent Mr. VanHauer brings any state-law claims, those claims will be dismissed for lack of supplemental jurisdiction.

I[1]

*The Minneapolis Police Department responds to a report that Mr. VanHauer is suicidal.* On April 30, 2017, the Minneapolis Police Department ("MPD") "received a false report" that Mr. VanHauer was suicidal. 2d. Am. Compl. [ECF No. 8] at 6 ¶ 1. MPD

---

[1] The facts will be drawn from the Second Amended Complaint and taken as true. But why requires clarification. Mr. VanHauer filed a Complaint, ECF No. 1, an Amended Complaint, ECF No. 7, and a Second Amended Complaint, ECF No. 8. A party may only amend its pleading "once as a matter of course." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Mr. VanHauer did not file a motion to amend or obtain written consent. *See generally* Docket. Nonetheless, Defendants generally draw facts and identify claims from the Second Amended Complaint. *See* ECF No. 59 at 2–3 (citing ECF No. 8); ECF No. 40 at 11 (same); ECF No. 34 at 1 n.1. Nor has any Defendant objected to Mr. VanHauer's Second Amended Complaint. Given the absence of any objection or motion to strike for the past eleven months, and the substantial similarities between the First and Second Amended Complaints, the Second Amended Complaint will be treated as the operative complaint. And facts will be drawn only from the Second Amended Complaint. Although Defendants request consideration of several matters outside the pleadings, *see* ECF No. 41; ECF No. 48, none need be considered to grant their motions.

officers subsequently "contacted [Mr. VanHauer] at his home at approximately 12:25 a.m." *Id.* The officers entered his home without a warrant and "refused to inform [Mr. VanHauer] of the reason they were entering." *Id.* at 6 ¶ 3. "MPD handcuffed [Mr. VanHauer] and dragged [him] outside out of his home, seated him on concrete for a period of approximately 30 minutes and questioned [him] without legal representation." *Id.* at 6 ¶ 6. MPD officers threatened Mr. VanHauer with sedation if he did not cooperate and "then ordered Hennepin Healthcare emergency medical technician staff to inject [him] with unknown sedatives." *Id.* at 6 ¶¶ 11–12.

*Mr. VanHauer is hurt by a tight blood pressure cuff.* Mr. VanHauer was then taken by ambulance to a hospital operated by Hennepin Healthcare. *See* 2d. Am. Compl. at 6 ¶¶ 12–13. During the ambulance ride, Mr. VanHauer "reported preexisting injuries to both upper extremities." *Id.* at 7 ¶ 18. Nonetheless, Mr. VanHauer "was subjected to an automated blood pressure monitor placed on the left arm, with multiple preexisting injuries, and which then ran continuously for an extended period of time." *Id.* at 7 ¶ 19. This "caus[ed] both immediate and chronic pain." *Id.* at 7 ¶ 20. Hennepin Healthcare staff refused to remove the blood pressure cuff. *Id.*[2]

*Mr. VanHauer is hospitalized and placed on a 72-hour mental health hold.* When Mr. VanHauer arrived at Hennepin Healthcare, he was placed on a 72-hour hold "based simply on the fact that [he] was 'agitated.'" 2d. Am. Compl. at 7 ¶ 25. "Hospital staff

---

[2]   It can be inferred that a blood pressure cuff was placed on Mr. VanHauer in the ambulance and a second blood pressure cuff was placed during his hospital stay. 2d. Am. Compl. at 7 ¶ 18 ("[B]lood pressure monitor was placed on the left leg."); ¶ 19 ("[A]n automated blood pressure monitor [was] placed on the left arm.").

3

falsely claimed suicidal ideation and intention" despite Mr. VanHauer "deny[ing] all suicidal ideology." *Id.* at 7 ¶ 26. This 72-hour hold was based in part on information provided by the MPD. *Id.* at 6–7 ¶ 15 ("MPD presented Hennepin Healthcare with previous mental health diagnosis and symptoms that were obtained by the MPD officers by coercion and duress.").

*Mr. VanHauer is mistreated by hospital staff during the 72-hour hold.* While held at the hospital, Mr. VanHauer "was repeatedly sedated as punishment for screaming in pain and asking for food, water, and access to restroom facilities." 2d. Am. Compl. at 7 ¶ 23. He was also "administered sedatives and/or psychotropic substances" against his will. *Id.* at 7 ¶ 24. The last instance of sedation "result[ed] in sexual assault." *Id.* at 7–8 ¶ 27 ("[Mr. VanHauer] found what appeared to be semen and blood in [his] stool."). "Before and after being placed on a mental health hold, [Mr. VanHauer] was continuously restrained in a painful position for an extended period of time." *Id.* And he was "provided inadequate clothing, . . . denied requests for additional clothing, and restrained in solitary confinement for an extended period of time in substandard temperatures." *Id.* At one point, hospital staff "forcibly stripped" Mr. VanHauer with no privacy curtain or door, "expos[ing] [him] to people in the hallway." *Id.*

*Mr. VanHauer attempts to report his mistreatment.* After he was released from the hospital, Mr. VanHauer attempted to file complaints against the MPD and Hennepin Healthcare. 2d. Am. Compl. at 8 ¶¶ 28–31. The MPD "repeatedly refused to take [his] complaints." *Id.* at 8 ¶ 28. "Hennepin Healthcare similarly refused to accept or properly investigate sexual assault allegations." *Id.* at 8 ¶ 29. Mr. VanHauer also requested records

4

from the City of Minneapolis and Hennepin Healthcare. *Id.* at 8 ¶¶ 28–29. The City of Minneapolis "repeatedly refused to release documents and data . . . for a period of up to 18 months after the incident." *Id.* at 8 ¶ 28. Hennepin Healthcare "refused to release medical records repeatedly over a prolonged and extended period of time." *Id.* at 8 ¶ 29.

*The claims*. On August 24, 2023, Mr. VanHauer filed the operative Second Amended Complaint. Mr. VanHauer brings several § 1983 claims alleging that Defendants violated his First, Second, Fourth, Fifth, Eighth, and Fourteenth Amendment rights. 2d. Am. Compl. at 4–5. He also alleges that Defendants violated the ADA. *Id.* at 5. Mr. VanHauer requests several forms of injunctive relief, *e.g.*, *id.* at 9 (requesting "[c]hanges in state, city, hospital, and police department laws, ordinances, policies, and procedures that allow or encourage discrimination, prevent investigation of complaints, and deprive individuals of civil rights"), financial compensation, and punitive damages, *id.*

II

A Rule 12(c) motion for judgment on the pleadings is assessed under the same standard as a Rule 12(b)(6) motion. *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "state

a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Mr. VanHauer's *pro se* pleadings are entitled to liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). *Pro se* complaints, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." *Id.* at 94. "[I]f the essence of an allegation is discernible," the district court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (citation omitted). However, even under this liberal standard, a *pro se* complaint must contain specific facts in support of the claims it advances. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

III

A

The State of Minnesota moves to dismiss Mr. VanHauer's § 1983 claims based on Eleventh Amendment immunity. Absent waiver of immunity by a state or a valid congressional override, the Eleventh Amendment bars suits in federal court against a state "for any kind of relief." *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007). "[I]t is widely recognized that 'Minnesota has *not* waived its Eleventh Amendment immunity from suit in federal court for federal constitutional claims.'" *Capers v. Ramsey Cnty. Pub. Def.*, No. 13-cv-1041 (PJS/JJG), 2014 WL 1048517, at *4 (D. Minn. Mar. 18,

2014) (quoting *Eaton v. Minn. Att'y Gen.'s Off.*, No. 10-cv-1804 (JRT/FLN), 2011 WL 1195777, at *3 (D. Minn. Mar. 28, 2011)); *see Cooper v. St. Cloud State Univ.*, 226 F.3d 964, 969 (8th Cir. 2000). And "Congress has not abrogated Eleventh Amendment immunity for § 1983 claims." *Capers*, 2014 WL 1048517, at *5 (citing *Quern v. Jordan*, 440 U.S. 332, 342, 345 (1979)). Accordingly, Mr. VanHauer's § 1983 claims against the State of Minnesota will be dismissed for lack of subject-matter jurisdiction.

The State of Minnesota moves to dismiss Mr. VanHauer's ADA claims for failure to state a claim, not based on Eleventh Amendment immunity. ECF No. 34 at 5 n.5. Because the Eighth Circuit has described sovereign immunity as a threshold jurisdictional matter, *Lors v. Dean*, 746 F.3d 857, 861 (8th Cir. 2014) (citing *Harmon Indus., Inc. v. Browner*, 191 F.3d 894, 903 (8th Cir. 1999)), that jurisdictional question would ordinarily need to be resolved before reaching the merits, *see, e.g.*, *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[J]urisdictional questions ordinarily must precede merits determinations in dispositional order."). The merits-based and jurisdictional inquiries collapse here, but why this is so requires some explanation. As best can be determined, Mr. VanHauer brings a claim under Title II of the ADA.[3] Minnesota

---

[3] Title I of the ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112. Title I plainly doesn't apply because no employment relationship is described in the Second Amended Complaint. "Title III of the ADA proscribes discrimination in places of public accommodation against persons with disabilities." *Durand v. Fairview Health Servs.*, 902 F.3d 836, 841 (8th Cir. 2018) (quoting *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000)). Title III of the ADA only applies to private entities providing public

has not waived immunity for such claims. *See* Minn. Stat. § 1.05, subdiv. 4 (waiving immunity only for ADA claims brought by employees, former employees, or prospective employees). And "[t]here is no question that, in enacting the ADA and authorizing its attendant regulations, Congress intended to abrogate state sovereign immunity." *Klingler v. Dir., Dep't of Revenue*, 455 F.3d 888, 893 (8th Cir. 2006). To determine when Congress's abrogation of Title II is valid, the Supreme Court laid out a three-part framework. *United States v. Georgia*, 546 U.S. 151, 159 (2006). The first part of that framework is determining "which aspects of the State's alleged conduct violated Title II." *Id.* If a plaintiff fails to state a claim, there is no need to proceed any further. *See Lors*, 746 F.3d at 864 (describing the *Georgia* framework); *Roblero-Barrios v. Ludeman*, No. 07-cv-4101 (MJD/FLN), 2008 WL 4838726, at *6 (D. Minn. Nov. 5, 2008) ("Because Plaintiff has not established a violation of Title II of the ADA, the Court need not address the remaining factors in determining whether Congress had the power under § 5 of the Fourteenth Amendment to abrogate sovereign immunity under the circumstances of this case.").

Therefore, the question becomes whether Mr. VanHauer has plausibly stated a claim under Title II of the ADA. *See, e.g.*, *Hall v. Minn. Bd. of Physical Therapy*, No. 23-cv-0665 (WMW/LIB), 2023 WL 8934307, at *4 (D. Minn. Dec. 27, 2023) (starting with this question). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of

---

accommodations, "not to public entities." *DeBord v. Bd. of Educ. of Ferguson-Florissant Sch. Dist.*, 126 F.3d 1102, 1106 (8th Cir. 1997). All that's reasonably left is a Title II claim.

the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132. To state a claim under Title II of the ADA, a plaintiff must plausibly allege: "(1) they are qualified individuals with a disability; (2) they were denied the benefits of a public entity's service or program, or otherwise discriminated against; and (3) the denial or discrimination was based on their disability." *Loye v. Cnty. of Dakota*, 647 F. Supp. 2d 1081, 1087 (D. Minn. 2009) (citing *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999)).

The Second Amended Complaint lacks sufficient factual content to satisfy these elements. Mr. VanHauer does not allege he was disabled at the time of his seizure, transport, or hospitalization. That alone is a sufficient basis to dismiss his ADA claim. *See Bearbower v. Olmsted Med. Ctr.*, 668 F. Supp. 3d 831, 841 (D. Minn. 2023) ("Plaintiffs cannot satisfy the first element because they have failed to allege any facts to plausibly show they are disabled within the meaning of the ADA."). Mr. VanHauer does allege that he was denied basic necessities while in the hospital, documents related to the incident, and medical records. 2d. Am. Compl. at 7–8 ¶¶ 27–29. But even assuming these are benefits of a service, program, or activity within the scope of Title II, Mr. VanHauer does not plausibly allege a link between the denial of such benefits and a disability. Nor does he plausibly allege some other form of discrimination based on a disability. "Simply invoking the ADA by reference with no more information or support is insufficient to plead a cognizable claim." *Prager v. Allina Health*, No. 21-cv-1351 (DWF/ECW), 2021 WL

4895277, at *2 (D. Minn. Oct. 20, 2021) (similarly dismissing an ADA claim where a plaintiff failed to "specify how he is disabled or allege any specific violation of the ADA").[4]

B

The City of Minneapolis moves to dismiss Mr. VanHauer's § 1983 claims for failure to allege liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *Monell*'s basic rule is "that civil rights plaintiffs suing a municipal entity under 42 U.S.C. § 1983 must show that their injury was caused by a municipal policy or custom." *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 30–31 (2010). In other words, a municipality cannot be held liable under § 1983 because it employed a tortfeasor, but it may be "sued directly under § 1983 for monetary, declaratory, or injunctive relief . . . [only if] the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. Municipalities also "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690–91. Thus, the "first inquiry in any case alleging municipal liability under § 1983 is . . . whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

---

[4] To the extent Mr. VanHauer brings ADA claims against Hennepin Healthcare and the City of Minneapolis, those claims will be dismissed for the same reasons that Mr. VanHauer fails to state an ADA claim against the State of Minnesota.

In addition to liability for unconstitutional policies and customs, a municipality may be liable for failing to properly train its public servants. Inadequate training "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Canton*, 489 U.S at 388. A municipality "may be deemed deliberately indifferent if the policymakers choose to retain" a training program when they "are on actual or constructive notice that a particular omission in [that] training program causes city employees to violate citizens' constitutional rights." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Mr. VanHauer does not plausibly allege that a constitutional deprivation was caused by a City of Minneapolis policy or custom. The allegations on custom and policy are sparse and conclusory. *See* 2d. Am. Compl. at 7 ¶ 22 ("[The] City of Minneapolis maintain[s] laws, policies, and ordinances that encourage law enforcement to violate the civil rights of those with federally protected mental health conditions including laws protecting first responders from liability."). The closest he gets is alleging that "[t]he MPD complaint system is/was grossly inadequate, frequently malfunctioned whether by design or negligence, leaving complaints uninvestigated and unaddressed as a matter of policy." *Id.* at 8 ¶ 31. But no factual allegations plausibly and directly connect the alleged inadequacies of the MPD complaint system with a specific constitutional deprivation. Nor is it obvious what right an inadequate complaint system would violate and how. Combined with the absence of facts describing the MPD complaint system's inadequacies, this is not enough to state a *Monell* claim.

To the extent Mr. VanHauer is attempting to bring an inadequate-training claim, the same result follows. Only one allegation in the Second Amended Complaint relates to inadequate training. *See* 2d. Am. Compl. at 6 ¶ 14 ("MPD officers are not trained in medical or psychological assessment, diagnosis, crisis intervention, or treatment[.]"). But "[l]ack of particularized training that might have prevented [the unlawful conduct] does not establish a constitutional violation." *Mendoza v. United States Immigr. & Customs Enf't*, 849 F.3d 408, 420 (8th Cir. 2017). Nor does Mr. VanHauer plausibly allege facts to support deliberate indifference. He does not allege, for example, a pattern of similar (alleged) Fourth Amendment violations by police officers provided the City of Minneapolis with constructive notice. *Connick*, 563 U.S. at 62 (2011) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."). Courts have dismissed failure-to-train claims with a stronger factual basis than Mr. VanHauer alleges here. *See, e.g.*, *Broadus v. Johnson*, No. 16-cv-1211 (WMW/SER), 2017 WL 11707857, at *5–7 (D. Minn. Apr. 27, 2017).[5]

---

[5] Mr. VanHauer names the MPD as a separate Defendant. But the MPD is not a suable entity separate from the City of Minneapolis. *El-Alamin v. Radke*, 369 F. App'x 770, at *1 (8th Cir. 2010) ("[T]he Minneapolis Police Department (MPD) is not a suable entity."); *Polta v. City of St. Paul Police Dept.*, No. 06-cv-1014 (PAM/AJB) 2006 WL 1174210, at *2 (D. Minn. May 1, 2006) ("A municipal police department is simply not a 'suable entity;' it is merely a part of some larger municipal government, and has no separate legal existence by itself."). Even if the MPD was suable as a separate legal entity, Mr. VanHauer's claims against the MPD would be dismissed for the same reason his claims against the City of Minneapolis will be dismissed.

C

Hennepin Healthcare moves to dismiss Mr. VanHauer's § 1983 claims on familiar grounds—failure to plausibly allege *Monell* liability. As a preliminary matter, Hennepin Healthcare may be sued under § 1983 as a public corporation that operates as a subsidiary of Hennepin County. *See, e.g.*, *Buckley v. Hennepin Cnty.*, 9 F.4th 757, 761 (8th Cir. 2021) (adjudicating § 1983 claims against Hennepin paramedics); Minn. Stat. § 383B.901 (creating "a corporation which shall be public in nature, operating as a subsidiary of the county of Hennepin"). Because Hennepin Healthcare is a municipal entity, to prevail on his § 1983 claims Mr. VanHauer must plausibly allege *Monell* liability. *See, e.g.*, *Perryman v. City of Bloomington*, --- F. Supp. 3d ----, No. 23-cv-1984 (DWF/DTS), 2023 WL 8374283, at *3 (D. Minn. Dec. 4, 2023). The same standards for *Monell* liability discussed in Part III.B apply here.

The Second Amended Complaint fails to identify any specific Hennepin Healthcare policy or custom, let alone link such a policy or custom to a specific constitutional deprivation. Rather, Mr. VanHauer's Hennepin-Healthcare focused allegations are incident specific. 2d. Am. Compl. at 7 ¶ 16 ("Hennepin Healthcare was informed. . ."); ¶ 17 ("Hennepin healthcare did knowingly use false statements. . ."); ¶ 20 ("Hennepin Healthcare refused to remove blood pressure cuff. . ."); ¶ 21 ("Hennepin healthcare used [his] agitation. . ."). He does not describe, for example, Hennepin Healthcare's policies or customs regarding 72-hour mental health holds. Mr. VanHauer's allegations of "an isolated incident of alleged [municipal-employee] misconduct . . . cannot, as a matter of law, establish a municipal policy or custom creating liability under § 1983." *Ulrich v. Pope*

13

*Cnty.*, 715 F.3d 1054, 1062 (8th Cir. 2013); *Triemert v. Washington Cnty.*, No. 13-cv-1312 (PJS/JSM), 2013 WL 6729260, at *12 (D. Minn. Dec. 19, 2013) ("Because there are no factual allegations describing any specific policy, custom or practice that was established by any particular defendant, [plaintiff] has failed to plead an actionable *Monell* claim."). Nor does he allege facts from which an inference regarding the existence of a particular policy, custom, or practice could be drawn. *See D.B. v. Hargett*, No. 13-cv-2781 (MJD/LIB), 2014 WL 1371200, at *5–6 (D. Minn. Apr. 8, 2014).

The same follows to the extent Mr. VanHauer attempts to bring a failure-to-train claim under *Canton*. The Second Amended Complaint does not include allegations regarding Hennepin Healthcare's training. Absent such allegations, no link is established between inadequate training and a constitutional violation. And Mr. VanHauer does not allege a pattern of misconduct that would put Hennepin Healthcare on notice to satisfy the deliberate-indifference standard. *See Ulrich*, 715 F.3d at 1061 (affirming dismissal of failure-to-train claim where a complaint lacked similar factual content).[6]

D

In response to the pending motions to dismiss, Mr. VanHauer requested permission to amend his complaint to meet the criteria for a § 1983 action. ECF Nos. 72–74. He did not file a copy of the proposed amended pleading in compliance with D. Minn. LR 15.1(b). Nor did he explain what factual content his amended complaint would include. *See* ECF

---

[6]   Mr. VanHauer might be bringing a HIPAA claim. *See* 2d. Am. Compl. at 8 (alleging that "relationships were irreparably damaged by [Hennepin Healthcare] violating patient privacy and HIPPA [sic] laws."). If so, that claim would be dismissed because "HIPAA does not create a private right of action." *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010).

14

Nos. 72–74.  "[A] party is not entitled to amend a complaint without making a showing that such an amendment would be able to save an otherwise meritless claim." *Plymouth Cnty. v. Merscorp, Inc.*, 774 F.3d 1155, 1160 (8th Cir. 2014).  Given that Mr. VanHauer has already amended his complaint twice, *see* ECF Nos. 7, 8, and lacking a showing of how an amendment would save his claims, the request to amend will be denied and the action will be dismissed.

E

The Second Amended Complaint could reasonably be construed to contain some state-law claims.  For example, Hennepin Healthcare argues that "[t]he gravamen of Mr. VanHauer's claims sound in medical malpractice."  ECF No. 40 at 1.  And his allegations regarding the municipal Defendants' failure to provide data could be construed as a claim under the Minnesota Government Data Practices Act.  To the extent state-law claims remain, a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Barstad v. Murray Cnty.*, 420 F.3d 880, 888 (8th Cir. 2005) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).  And the Eighth Circuit has instructed district courts not to exercise supplemental jurisdiction over state-law claims when, as here, all federal claims are dismissed well before trial.  *See Hervey v. Cnty. of Koochiching*, 527 F.3d 711, 726–

27 (8th Cir. 2008). There is no reason to deviate from this general rule here, where the case remains in its earliest stages and Mr. VanHauer's state-law claims are ill-defined.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT:**

1. Defendant State of Minnesota's Motion to Dismiss [ECF No. 31] is **GRANTED**.

2. Defendant Hennepin Healthcare System, Inc.'s Motion to Dismiss [ECF No. 38] is **GRANTED**.

3. Defendants City of Minneapolis and Minneapolis Police Department's Motion for Judgment on the Pleadings [ECF No. 57] is **GRANTED**.

4. Defendants' Motions are **GRANTED** as follows:

    a. Plaintiff Andrew Cole VanHauer's § 1983 claims against Defendant State of Minnesota are **DISMISSED without prejudice**.

    b. Plaintiff's remaining federal claims are **DISMISSED with prejudice**.

    c. Plaintiff's state-law claims are **DISMISSED without prejudice**.

5. The Second Amended Complaint [ECF No. 8] is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 25, 2024

s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court